IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re MICHAEL WOLF,<br><br>        Debtor.<br><br>------------------------------------------------<br><br>N. NEVILLE REID, not individually, but solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Michael A. Wolf, et al.,<br><br>        Plaintiffs-Appellees,<br><br>        v.<br><br>MICHAEL WOLF, SCOTT WOLF, et al.,<br><br>        Defendants-Appellants. | Nos. 18 C 07952, 18 C 07953, 19 C 01978, 19 C 08154, and 19 C 08299<br><br>Judge John J. Tharp, Jr.<br><br>(Bankr. No. 14 B 27066) |

## ORDER

    For the reasons set forth in the Statement below, Defendants-Appellants Michael Wolf's and Scott Wolf's motions for rehearing and reconsideration in case numbers 18-cv-07952 [81], 18-cv-07953 [51], 19-cv-01978 [41], 19-cv-08154 [36], and 19-cv-08299 [36] are denied.

## STATEMENT

    Defendants-Appellants Michael Wolf and Scott Wolf move separately under Federal Rule of Bankruptcy Procedure 8022 for rehearing following affirmance on appeal of a final default judgment entered against them by the bankruptcy court. Scott—on behalf of MMQB, Inc., his wholly-owned company and alter ego—also moves under Federal Rule of Civil Procedure 59(e) for reconsideration of this Court's final judgment against MMQB, Inc. following *de novo* review of the bankruptcy court's proposed findings of fact and conclusions of law. The various motions assert that this Court manifestly erred in denying Michael's discharge and in ruling that Plaintiff-Appellee Neville Reid—the Chapter 7 Trustee of Michael's bankruptcy estate—may avoid two prepetition fraudulent transfers pursuant to 11 U.S.C. § 544(b) and 11 U.S.C. § 548. Although the motions request distinct relief, they rely upon a single common proposition: that Michael's bankruptcy estate held no interests in property because all of Michael's interests in property either vested or would have vested in his martial estate and then either were or would have been awarded to his ex-wife through divorce prior to bankruptcy.

Michael and Scott's argument only requires recounting a few basic facts. In 2011, Michael and his then-wife Elizabeth separated, and in 2013, Elizabeth petitioned for divorce. In the intervening period, Michael made two fraudulent transfers. First, on behalf of his wholly-owned company and alter ego, Zig-Zag Corp.—which nominally owned and distributed a trade publication entitled Monday Morning Quarterback (MMQB)—Michael transferred the MMQB business for no consideration and without written agreement to another shell company he wholly owned called ZZC, Inc. ("Transfer No. 1"). Then, Michael transferred 51% of ZZC, Inc.'s stock to his adult son, Scott—again for no consideration and without written agreement—leaving Michael with a 49% share of ZZC, Inc. ("Transfer No. 2"). Soon after Elizabeth petitioned for divorce, Michael petitioned for bankruptcy.

Four years after Michael petitioned for bankruptcy, the Illinois Circuit Court overseeing his divorce proceeding issued a judgment for dissolution of marriage. That judgment decreed what property comprised Michael and Elizabeth's marital estate and awarded the entire marital estate to Elizabeth. Included in the property of the marital estate that Elizabeth received was Michael's 100% shareholder interest in Zig-Zag Corp. and his 49% shareholder interest in ZZC, Inc.

Back in bankruptcy, the bankruptcy court sanctioned both Michael and Scott with default. It then held that Transfers Nos. 1 and 2 were fraudulent and avoidable by the Trustee pursuant to sections 544(b) and 548 of the Bankruptcy Code. And because Zig-Zag Corp., not Michael, originally held legal title to the MMQB business, and because a bankruptcy trustee's avoidance powers are generally limited to "transfer[s] of an interest of the debtor in property," *see* 11 U.S.C. §§ 544(b), 548, the bankruptcy court pierced Zig-Zag Corp.'s corporate veil to allow for avoidance of Transfer No. 1. The result was a final default judgment against Scott for the value of the MMQB business ($2,100,000; as the subsequent transferee of Transfer No. 1) and, noncumulatively, for the value of a 51% shareholder interest in ZZC, Inc. (51% of $2,100,000; as the initial transferee of Transfer No. 2). The final default judgment also denied Michael his discharge based on various fraudulent or deceitful misdeeds before the bankruptcy court and the Illinois Circuit Court.

On appeal, Michael and Scott claimed, among other things, that Transfers Nos. 1 and 2 were not avoidable under sections 544(b) and 548. They argued in support that there were no "interest[s] of the debtor in property" for the Trustee to avoid because Michael and Elizabeth's divorce judgment awarded Elizabeth the entire marital estate. This Court rejected that argument on two grounds. First, Michael's 51% shareholder interest in ZZC, Inc. (as distinguished from the 49% interest that was included in the marital estate) was never deemed to be marital property, therefore Elizabeth's receipt of the entire marital estate was irrelevant to Transfer No. 2. *In re Wolf*, 644 B.R. 725, 747 (N.D. Ill. 2022). Second, and more generally, this Court explained that fraudulent transfers are avoidable under sections 544(b) and 548 "so long as the transferred interest in question was 'an interest of the debtor in property' ***at the time of the transfer*** . . . ." *Id.* (emphasis in original). The fact that Michael's divorce judgment divested Michael of his interest in Zig-Zag Corp. (and by extension, the MMQB business) prior to the commencement of his bankruptcy case therefore did not prevent Transfer No. 1's avoidance. *Id.* This Court ultimately affirmed the bankruptcy court's final default judgment in its entirety. *Id.* at *22.

Michael and Scott now move for rehearing and reconsideration pursuant to Rules 8022 and 59(e), claiming that this Court misapprehended their argument on appeal and failed to apply controlling precedent when affirming the bankruptcy court's judgment. The operative question with respect to sections 544(b) and 548, they now say, is not whether a transferred interest was "an interest of the debtor in property" at the time of the transfer, but whether the transferred interest would still have been "an interest of the debtor in property" by the time the bankruptcy case commenced, assuming hypothetically that the prepetition transfer had never occurred. For this, they point to *Begier v. I.R.S.*, wherein the Supreme Court defines "property of the debtor" as "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." 496 U.S. 53, 58 (1990).[1] Accordingly, Michael and Scott argue that Transfers Nos. 1 and 2 cannot be avoided because the property at issue would not have been part of the bankruptcy estate even if the transfers had not occurred. If Transfers Nos. 1 and 2 had never occurred, they argue, the relevant property interests would have been allocated to Elizabeth along with the rest of the marital estate prior to the commencement of Michael's bankruptcy.

As a threshold matter, this argument is untimely. Because Michael and Scott did not properly include it within their original appellate brief, the argument is waived. Federal Rule of Bankruptcy Procedure 8022 "is the exclusive vehicle for seeking a rehearing when a district court has acted in its appellate capacity . . . ." 10 Collier on Bankruptcy ¶ 8022.01 (16th ed. 2022). The rule is derived from Federal Rule of Appellate Procedure 40. Fed. R. Bankr. P. 8022 advisory committee's note to 2014 amendment. In turn, Rule 40 requires petitioners to "state with particularity each point of law or fact that . . . the court has overlooked or misapprehended." Fed. R. App. P. 40(a)(2). But a court cannot "overlook[] or misapprehend[]" an issue that was not presented to it. *Easley v. Reuss*, 532 F.3d 592, 593 (7th Cir. 2008). "[R]ehearing is not a vehicle for presenting new arguments, and, absent extraordinary circumstances, [appellate courts] shall not entertain arguments raised for the first time in a petition for rehearing." *Id.* at 593–94. Similarly, "[t]he purpose of Federal Rule of Civil Procedure 59(e) is to allow a party to bring to the district court's attention a manifest error of fact or law so that it may correct, or at least address, the error in the first instance." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020). "A Rule 59(e) motion, however, 'does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" *Id.* (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

---

[1] The *Berger* Court provided this definition in the context of section 547. Nonetheless, Michael and Scott also rely on *In re French*. There, the Fourth Circuit extended *Berger* to explain that "§ 548 plainly allows a trustee to avoid any transfer of property that **would have been** 'property of the estate' prior to the transfer in question . . . even if that property is not 'property of the estate' ***now***." 440 F.3d 145, 151 (4th Cir. 2006) (emphasis in original). Michael and Scott additionally cite *MacDonald v. Estate of Gayton*, 469 F.3d 1079 (7th Cir. 2006), and *In re Emerald Casino, Inc.*, 223 F. Supp. 3d 740 (N.D. Ill. 2016)—two cases which describe a similar principle in application of Illinois' Uniform Fraudulent Transfer Act (the state law incorporated by section 544(b) in this case).

Here, no trace of the argument Michael and Scott now advance for rehearing and reconsideration may be found within their original brief. Tellingly, they do not cite their original brief once to identify with any particularity what this Court missed. Nor is *Beiger* or any other similar case they now rely upon formerly cited, despite the claim that this Court ignored precedent. The only implication is that their present argument is new. Scott himself even characterizes his argument as a "reacti[on]" to this Court's opinion. Reply 6 n.8, No. 18-cv-07952, ECF No. 79. Any supposed error of this Court, then, is not the result of judicial misapprehension of an argument made but of flawed advocacy. All motions for rehearing and reconsideration are accordingly denied.

Out of respect for the Trustee's substantive defense of these motions, the Court will nevertheless briefly address the merits of Michael and Scott's argument. The fatal flaw in their argument is not the legal principle they assert but the counterfactual to which they apply it. At base, Michael and Scott **presume** that had Transfers Nos. 1 and 2 not occurred, the relevant property interests would have been deemed marital property by the Illinois Circuit Court and awarded to Elizabeth via the divorce judgment. But this is sheer speculation. Had Transfers Nos. 1 and 2 not occurred, the Circuit Court's property division—not to mention Michael and Elizabeth's legal fight over it—could have (more likely **would have**) taken a different form. Notably, Michael and Scott's current presumption that the relevant property interests would have hypothetically been deemed marital property runs counter to the actual position Michael took before the Circuit Court. In his divorce proceeding, Michael "assert[ed] that MMQB and Zig Zag are not marital assets . . . ." J. for Dissolution of Marriage - Findings & Rulings 2, *In re Wolf*, No. 16-ap-00066 (Bankr. N.D. Ill. July 13, 2018), ECF No. 597-1 (dated Nov. 13, 2017). It therefore cannot be assumed that the Circuit Court would have deemed the MMQB business and Michael's 100% shareholder interest in ZZC, Inc. to be marital property, and even if it could be, it is yet further speculation that the Circuit Court would have then still awarded the entire marital estate to Elizabeth.

The operation of sections 544(b) and 548 may not be thwarted by a speculative outcome, especially one of many possible counterfactuals selected by the debtor.[2] Michael and Scott concede that "[w]e can't speculate how the Circuit Court would have awarded [the relevant property interests]," but then proceed, in the same breath, to contend it is impermissible to presume the Circuit Court would *not* have deemed the relevant property interests to be a part of the marital estate. Reply 6, No. 18-cv-07952, ECF No. 79. But why should Michael and Scott's preferred counterfactual receive deference over the other possibilities? Deference, if any is warranted in this context, should be given to the Trustee's preferred counterfactual (*i.e.*, that the relevant property interests would have remained outside the marital estate and vested in the bankruptcy estate unencumbered). This is because "property of the debtor," as that phrase informs sections 544(b) and 548, is construed broadly. As this Court noted in its opinion affirming the judgment, *In re Wolf*, 644 B.R. at 743, it includes "every conceivable interest of the

---

[2] Consider, for example, whether Michael would even have petitioned for bankruptcy had he not fraudulently divested his interests via Transfers Nos. 1 and 2, since doing so would have effectively surrendered control of the MMQB business to the Trustee during the intervening four years between his bankruptcy petition and his judgment for dissolution of marriage.

debtor, future, nonpossessory, contingent, ***speculative***, and derivative . . . ." *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014) (emphasis added).

The only non-speculative outcome is how the Circuit Court actually ruled, and it held by omission that neither the MMQB business nor Michael's 51% shareholder interest in ZZC, Inc. were a part of Michael and Elizabeth's marital estate. There is no sound basis to speculate how the Circuit Court might have ruled differently had Transfers Nos. 1 and 2 not occurred. This Court therefore did not err by affirming the bankruptcy court's final default judgment based on the facts as they actually occurred.

Date: December 8, 2022

John J. Tharp, Jr.
United States District Judge